**FISCHBACH AND MOORE INTERNATIONAL CORP.,**
Appellant,

v.

**Warren M. CHRISTOPHER, Secretary of State, Appellee.**

No. 92–1092.

United States Court of Appeals,
Federal Circuit.

March 2, 1993.

Thomas B. Newell, Watt, Tieder, Killian & Hoffar, of McLean, VA, argued for appellant. With him on the brief was Charlie C.H. Lee.

Sheryl L. Floyd, Attorney, Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Dennis Gallagher, Dept. of State, Arlington, VA, of counsel.

Before NEWMAN, MICHEL, and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

Fischbach and Moore International Corp. (FMIC or appellant) appeals the decision of the Armed Services Board of Contract Appeals (Board) which dismissed FMIC's claim for lack of jurisdiction because of a defective certification. *Fischbach and Moore Int'l Corp.*, ASBCA No. 42,170, 92–1 BCA ¶ 24,511, 1991 WL 215098 (1991). The Board held that FMIC's certification was defective because (1) the certifier represented the supporting data as accurate and complete to the best of his "understanding and belief," rather than his "knowledge and belief" as set forth in the Contract Disputes Act (CDA), 41 U.S.C. § 605(c)(1) (1988), and (2) the certifier was not qualified under either prong of the Federal Acquisition Regulation (FAR), 48 C.F.R. § 33.207(c)(2)(i) & (ii) (1991). Because the language of FMIC's certification satisfies the substantial compliance test of *United States v. General Electric Corp.*, 727 F.2d 1567, 1569 (Fed.Cir.1984), and because FMIC's Executive Vice President qualifies under 48 C.F.R. § 33.207(c)(2)(ii), the Board erred in rejecting the certification. As the claim was properly certified, the Board does have jurisdiction. Therefore, we reverse and remand.

## I. BACKGROUND

On September 28, 1987, FMIC and the Department of State entered into Contract No. 2048–713288 for the construction of classified integrated security systems in certain buildings in the Peoples Republic of China. According to the terms of the contract, FMIC was to commence performance of the contract within 30 days after receiving a notice to proceed. The government never issued a notice to proceed and terminated the contract for convenience on December 5, 1988.

On June 13, 1989, FMIC submitted a termination for convenience claim to the contracting officer. The claim was certified by Mr. Charles C. Dirik, FMIC's Executive Vice President during pendency of the project and preparation of the claim. The certification stated:

I hereby certify, on behalf of Fischbach and Moore International Corp., in full compliance with the Contract Disputes Act of 1978, that Fischbach and Moore International Corp.'s claim in the amount of $1,259,051.00 pertaining to the termination of Contract No. 2048–713288 is made in good faith; that the supporting data are accurate and complete to the best of my *understanding and belief;* and that the amount requested accurately reflects the amount for which Fischbach and Moore International Corp. believes the Government is liable.

92–1 BCA at 122,331 (emphasis added).

The contracting officer never issued a final decision on the claim, and FMIC appealed to the Board on December 14, 1990, pursuant to 41 U.S.C. § 605(c)(5) (1988). By letter dated June 21, 1991, the Board ordered appellant to "submit evidence to show that its certification met the require-

ments of FAR §§ 33.207(a) and (c)(2)." [1] FMIC responded: "There can be no question that Mr. Dirik meets the standard set forth in [*United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996 (Fed.Cir.1991) (*Newport News I*)]. [2] In support of its response, FMIC submitted a copy of a portion of FMIC's corporate by-laws and an affidavit from Mr. Dirik. The by-laws state in pertinent part:

> *SECTION 3. President.* The President shall be the Chief Executive Officer of the Corporation and shall preside at all meetings of the stockholders. The president shall sign all certificates of stock, bonds, deeds and contracts of the Corporation; and he shall perform all other duties commonly incident to his office and those specifically delegated to him from time to time by the Board of Directors.
>
> *SECTION 4. Vice President.* Except as specially limited by vote of the Board of Directors, *any Vice President may,* within the territorial limitations of the office in which employed, *perform the duties of the President,* and shall have the power to sign all certificates of stock, bonds, deeds and contracts of the Corporation whenever authorized to do so by the Board of Directors. He shall perform such other duties and have such other powers as the Board of Directors shall specifically delegate to him from time to time. Any Vice President who may be designated by the Board as the Executive Vice President shall have such further authority as the Board of Directors shall specifically delegate to him from time to time.

(Emphasis added.) Mr. Dirik's affidavit states:

> 1. I was the Executive Vice President of Fischbach and Moore International Corp. during performance of the project and preparation of the claim.
>
> 2. I was the most senior official at Fischbach and Moore International Corp. who had direct knowledge of the China project, Contract No. 2048–713288, during performance.
>
> 3. I was the senior most official at Fischbach and Moore International Corp. having *overall responsibility for the company's affairs on the project.*
>
> 4. My duties and responsibilities on the project included monitoring costs and performance.
>
> 5. The claim which I certified on behalf of Fischbach and Moore International Corp. was accurate and complete to the best of the contractor's knowledge and belief.

(Emphasis added.)

On October 17, 1991, the Board issued its decision dismissing the claim for lack of jurisdiction. With respect to the language of the certification, the Board held that "[o]mission of the word 'knowledge' from the certification renders it defective," 92–1 BCA at 122,332, because the word " 'under-

---

**1.** FAR § 33.207(a) provides:

> A contractor claim exceeding $50,000 shall be accompanied by a certification that—
> (1) The claim is made in good faith;
> (2) Supporting data are accurate and complete to the best of the contractor's knowledge and belief; and
> (3) The amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

48 C.F.R. § 33.207(a).

FAR § 33.207(c)(2) provides:

> If the contractor is not an individual, the certification shall be executed by—
> (i) A senior company official in charge at the contractor's plant or location involved; or
> (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

48 C.F.R. § 33.207(c)(2).

**2.** With respect to the language of its certification, FMIC simply stated that "[a]ppellant affirmatively alleges that 'understanding' and 'belief' have the same meaning within the spirit of § 33.207(a)." Although appellant's statement does not address the real issue, *i.e.,* whether "understanding" and "knowledge" have the same meaning, appellant's statement was responsive to the issue as posed by the Board's letter dated June 21, 1991. The Board inaccurately stated that "appellant certified that the supporting data accompanying its 6 June 1989 claim were accurate and complete to the best of the contractor's 'knowledge and understanding.'" If that were the case, the relevant issue would have been whether "understanding" and "belief" have the same meaning. We construe FMIC's position to be that the word actually used is equivalent to the statutory word which it replaced, *i.e.,* "understanding" for "knowledge."

stand' is not the substantial equivalent of 'knowledge', [and because] the language substitution diluted the strength of the certification," *id.* With respect to Mr. Dirik as the certifier, the Board held that he did not satisfy either prong of the FAR. The Board concluded that Mr. Dirik did not satisfy the first prong, which requires that the certifier be "[a] senior company official in charge at the contractor's plant or location involved," FAR § 33.207(c)(2)(i), because "[t]here is no evidence as to who was in charge at the site," 92–1 BCA at 122,333. The Board concluded that Mr. Dirik did not satisfy the second prong, which requires that the certifier be "[a]n officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs," FAR § 33.207(c)(2)(ii), because "Mr. Dirik's affidavit does not indicate that he had 'overall responsibility for the conduct of the contractor's affairs' generally." 92–1 BCA at 122,333.

■ On December 6, 1991, FMIC appealed the Board's decision to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(10) (1988) and 41 U.S.C. § 607(g)(1) (1988). Our review is limited by statute:

> [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b) (1988). Whether or not the Board has jurisdiction is a question of law. *Transamerica Ins. Corp. v. United States,* 973 F.2d 1572, 1576 (Fed.Cir.1992). Because proper certification of a contractor's claim is a jurisdictional prerequisite for claims over $50,000, *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985) (citing *W.S. Schlosser Co., Inc. v. United States,* 705 F.2d 1336 (Fed.Cir.1983)), it too is a question of law which we review *de novo.*

## II. ANALYSIS

■ *1. Language of FMIC's certification.* The Contract Disputes Act (CDA) provides in pertinent part:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his *knowledge and belief,* and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1) (emphasis added).[3] Except for the substitution of the word "understanding" for the word "knowledge," the contractor in this case recited the exact words of this provision in its certification. The government argues nonetheless that "[t]he effect of using 'understanding' instead of 'knowledge' is to convey the inescapable impression that the certifier is distancing himself from the supporting data and disavowing personal knowledge." This argument is not persuasive for several reasons.

■ First, the argument's premise is false. The argument presumes that the certifier must have personal knowledge; however, the statute contains no such requirement. The statute simply requires that "the contractor shall certify ... that the supporting data are accurate and complete *to the best of his knowledge and belief.*" 41 U.S.C. § 605(c)(1) (emphasis added). The underlined phrase eases the burden imposed on the certifier and indeed allows the certifier to avoid asserting personal knowledge of the data. Customarily, the phrase "to the best of my knowledge and belief," or "information and belief" signifies indirect knowledge. It contrasts with the phrase, as used for example in affidavits requiring personal knowledge, "the facts are true and correct." We must assume Congress was aware of this distinction and intended to allow indirect knowledge. As to "distancing himself from the supporting data," the legislative history of

---

**3.** This statutory requirement is repeated in 48 C.F.R. § 33.207(a). *See supra* note 1.

section 605(c) suggests that Congress was concerned to bind the contractor itself, not the individual certifier. *See Ingalls Shipbuilding, Inc. v. O'Keefe,* 986 F.2d 486, 491–493 (Fed.Cir.1993) (citing S.Rep. No. 1118, 95th Cong., 2d Sess. 7–8 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5241–42).

Second, the term "understanding" is actually broader than the term "knowledge." The government admitted as much during oral argument. In fact, the dictionary definition of "understanding" relied upon by the Board expressly includes the concept of "knowledge":

> 2a: to *know,* consider, or accept as a fact, truth, or principle without further mention or explanation or without utter certainty ... b: to consider as a possible fact: infer or come to regard as plausible or probable without certain knowledge or proof: *know* through rumor or hearsay....

92–1 BCA at 122,332 (emphasis added) (quoting Webster's Unabridged New International Dictionary). Therefore, an affirmation that the supporting data is accurate and complete to the best of one's "understanding" necessarily includes an implicit affirmation that the supporting data is also accurate and complete to the best of one's "knowledge." The government's hypertechnical argument concerns mere semantics—not meaning and purpose—and is rejected.

■ Third, exact recitation of the language of section 605(c) is not required. This court has held that "substantial compliance" suffices. *General Electric,* 727 F.2d at 1569. *See also Transamerica,* 973 F.2d at 1578 (stating that "[t]his court will not require contractors to do more than to comply as fully and reasonably as possible with the statutory requirements of the CDA when this court has definitively stated that certain 'magic words' need not be used") (citing *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586,

592 (Fed.Cir.1987)). The certification in this case does substantially comply. There is no indication that Congress was concerned with degrees of strength in the wording of the certification. The legislative history shows Congress was simply concerned to bind the contracting organization in fraud and contract.[4] Thus, the certification language either so binds or does not. Here it does. That is all that the law requires. The government's argument about diluting the strength of the certification has no basis in the statute or the legislative history. It must be rejected.

■ The purpose of the certification requirement is to "trigger[ ] a contractor's potential liability for a fraudulent claim under section 604 of the Act. It is also designed to 'discourage the submission of unwarranted contractor claims and to encourage settlements.' " *Skelly and Loy v. United States,* 685 F.2d 414, 418 n. 11, 231 Ct.Cl. 370 (1982) (quoting *Folk Constr. Co. v. United States,* Ct.Cl. No. 99–80C, 226 Ct.Cl. 602 (order entered January 16, 1981)). That purpose is in no way subverted by the substitution of the word "understanding" for the word "knowledge" in this case. Accordingly, the language of the certification is proper, and the Board erred by dismissing the subject claim on that basis.

■ *2. The certifying official.* The CDA states that "the contractor shall certify...." 41 U.S.C. § 605(c)(1). "The statute, being silent on the question of the individual who may certify a claim for a non-individual contractor, leaves a gap." *United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 578 (Fed.Cir.1991). The FAR "fill[s] the gap implicitly left by Congress respecting *who* may certify." *Id.* The FAR provides:

> If the contractor is not an individual, the certification shall be executed by—
>
> (i) A senior company official in charge at the contractor's plant or location involved; or

---

**4.** See *Ingalls,* 986 F.2d at 491–493, for a detailed discussion of the legislative history of the certification requirement.

(ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

48 C.F.R. § 33.207(c)(2).

FMIC asserts that Mr. Dirik satisfies both prongs. Because this court has already addressed the adequacy of a nearly identical certifier under the second prong of the FAR certification provision, *Newport News I*, 933 F.2d 996, we rely on that case and decide the instant appeal under the second prong.[5]

In *Newport News I*, the court stated that "certification by a corporate officer, without explanation, necessarily implies that the contractor is representing that he has the requisite 'overall authority,' at least where his title is not inconsistent therewith." *Id.* at 998 n. 2. As in the instant case, the corporate officer who certified the claim in *Newport News I* was the Executive Vice President. The court stated that "our precedent suggests that an Executive Vice President, who, by title, clearly is a corporate officer with overall responsibilities, may certify a claim." *Id.* at 999 n. 3 (citing *Grumman Aerospace*, 927 F.2d at 581 ("Certainly a [Chief Executive Officer] *or one of equivalent status* would satisfy" subparagraph (ii). (Emphasis added.))). Accordingly, the court concluded that Newport News' Executive Vice President was an appropriate official under the second prong of the FAR to certify the claim. In reaching this conclusion, the court stated: "[T]he government [was] required to submit some sort of evidence or specific, substantiated allegation that this corporation's Executive Vice President 'lacked the required responsibility at the time he executed the certification.'" *Id.* at 1000 (quoting the Board opinion in *Newport News I*).

In the instant case, the government makes two arguments that Mr. Dirik lacked the requisite authority. First, the government argues that "FMIC has failed to establish that [Mr. Dirik] had or ever exercised overall responsibility for the conduct of FMIC's affairs *in general.* On the contrary, in his affidavit, Mr. Dirik simply stated that he had 'overall responsibility for the company's affairs *on the project.'*" This argument is not persuasive. Mr. Dirik's affidavit began with an affirmation that he "was the Executive Vice President of Fischbach and Moore International Corp. during performance of the project and preparation of the claim." That FMIC attempted to show through subsequent affirmations that Mr. Dirik also qualified under the first prong of the FAR does not in any way negate the fact that Mr. Dirik had overall responsibility for the affairs of the corporation as its Executive Vice President. Fairly read, Mr. Dirik's affidavit does not in any way represent or imply that his authority was limited solely to that project.

The government's second argument is based upon FMIC's corporate by-laws. The government contends that the by-laws "simply establish that the overall responsibility for the company's affairs rests with the president who is designated, under Article 3, section 3, as the chief executive officer." The government states:

Article III, section 4 provides that the vice president may perform the duties of the president 'within the territorial limitations of the office in which employed,' 'whenever authorized to do so by the Board of Directors.' Furthermore, that section provides that any vice president designated by board of directors as the executive vice president 'shall have such further authority as the Board of Directors shall specifically delegate to him from time to time.'

None of these quotations from the by-laws, however, support the government's conclusion. First, nothing in the record indicates that any territorial limits apply to Mr. Dirik's office as Executive Vice Presi-

5. Because we hold that Mr. Dirik is qualified under the second prong, we need not dwell on whether he also qualifies under the first prong. We note, however, the lack of merit in the contention advanced by the government and accepted by the Board that the "in charge" provision in FAR 33.207(c)(2) embraces more than being in charge of the contract. "To be in charge within the meaning of the FAR, a certifier need not be in charge of the plant or location, only of the contract." *Ingalls*, 986 F.2d at 489.

dent. While the regional vice presidents have their power limited by geography, the Executive Vice President, by definition, has powers that are not so limited. That officer is not regional, but central. Second, the clause, "whenever authorized to do so by the Board of Directors," applies not to a Vice President's power to perform the duties of the President generally, but only to a Vice President's power to sign certificates of stock, bonds, deeds and contracts. The latter power is not dispositive of whether such a corporate officer has "overall responsibility." Third, the last provision quoted by the government allows *additional* powers to be delegated by the Board of Directors to the Executive Vice President. It is irrelevant here as no argument is made by FMIC relying on any such "further authority." FMIC is relying only on the power of "the Executive Vice President" to perform the powers of the President in this, as in nearly all corporations. Additionally, that the Executive Vice President "shall have such *further* authority as the Board of Directors shall specifically delegate to him from time to time" (emphasis added), cannot negate the Executive Vice President's earlier granted overall authority. Indeed if it did, even the government's conclusion that the President has overall authority would be erroneous as a similar provision applies to the President. Therefore, consistent with the government's assertion that "the overall responsibility for the company's affairs rests with the president," overall responsibility for the company's affairs also rests with the Executive Vice President who, without any further delegation, is expressly authorized to "perform the duties of the President."

■ The government simply has failed to show that despite his title, the certifier here had less than "overall responsibility for the conduct of the contractor's affairs" as required by FAR 33.207(c)(2)(ii) to certify FMIC's claim. Because an Executive Vice President presumptively has such responsibility, *Newport News I*, 933 F.2d at

998 n. 2, the government's failure to rebut is fatal to its argument.

We note that the government's attempted distinction of *Newport News I* on the basis of the differing procedural postures of these cases is not persuasive. Although *Newport News I* was disposed of by summary judgment and, as the government asserts, "the Court simply agreed with the board that the Government had failed to create a genuine issue of material fact so as to preclude summary judgment ruling favorable to the contractor," *Newport News I* is still applicable to this case and commands a similar result. In *Newport News I*, the court stated that "the government has never disputed that [the certifying official] was Newport News' Executive Vice President at the time of certification and only complains on appeal that he was not proven to have had 'overall responsibility.'" *Id.* at 999 n. 3. Because a similar statement could be made in this case, *Newport News I* is indistinguishable.

## III. CONCLUSION

The Board erred in concluding that FMIC's certification was defective. The language of the certification satisfies the substantial compliance test of *General Electric*, and Mr. Dirik, as Executive Vice President, qualifies under the second prong of the FAR to certify the claim. Because the certification was proper, the Board does have jurisdiction to decide the merits of the claim.[6]

REVERSED and REMANDED.

COSTS

Each party to bear its own costs.

---

6. We note that Congress has since changed the jurisdictional aspect of claim certification. *See*

Federal Courts Administration Act of 1992, Public L. No. 102–572, § 907, 106 Stat. 4506, 4518.