**HARBOR SOFTWARE, INC., Plaintiff,**

v.

**APPLIED SYSTEMS, INC., Defendant.**

**No. 92 Civ. 8097 (HB).**

United States District Court,
S.D. New York.

Sept. 9, 1996.

Jeffrey C. Slade, Leventhal & Slade, New York City, for plaintiff.

Jeffrey D. Ullman, Ullman, Furhman, Platt & Koy, Morristown, NJ, for defendant.

## OPINION AND ORDER

BAER, District Judge:

Defendant Applied Systems, Inc. has moved pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing plaintiff's copyright infringement and Lanham Act causes of actions and for partial summary judgment against plaintiff's trade secret misappropriation cause of action. Plaintiff has withdrawn its Lanham Act claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Second Motion for Summary Judgment at 1 n. 1. Defendant's motion with respect to copyright infringement is granted in part and denied in part. Defendant's motion with respect to trade secret misappropriation is denied.

### Background

Harbor Software brought this action alleging copyright infringement, false designation of origin, fraud, trade secret misappropriation, unfair competition and unjust enrichment. These allegations are based on a failed business relationship between Harbor Software and Applied Systems under which Applied Systems was, according to the complaint, to incorporate plaintiff's computer program, the Sales Center Manager ("SCM"), into its own program, The Agency Manager ("TAM"). Plaintiff claims that Applied Systems stole and copied SCM and used the technology in an updated version of TAM. Defendant denies these allegations.

This is the Court's third substantive decision in this case. Applied Systems moved for summary judgment dismissing all causes of action except copyright infringement. On June 5, 1995, the Court denied that motion in its entirety. *See Harbor Software, Inc. v. Applied Systems, Inc.,* 887 F.Supp. 86 (S.D.N.Y.1995) (*Harbor Software I*). As to the copyright claim, this Court has undertaken the three-part abstraction-filtration-comparison analysis created by the Second Circuit in *Computer Associates International, Inc. v. Altai, Inc.,* 982 F.2d 693, 706 (2d Cir.1992).[1] On May 14, 1996, the Court found certain nonliteral elements of SCM, as represented in a series of graphical exhibits, were protectable under the Copyright Act. *See Harbor Software, Inc. v. Applied Systems, Inc.,* 925 F.Supp. 1042 (S.D.N.Y.1996) (*Harbor Software II*). Familiarity with these decisions is presumed.

### Discussion

#### I. Standard for Summary Judgment

The standard for granting summary judgment was previously set forth in this Court's decision denying defendant's first motion for summary judgment. For sake of clarity, it is restated here:

> Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment where the evidence shows that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary judgment is properly regarded ... as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue*

---

1. To assist the Court and the parties in this process, the Court appointed an expert pursuant to Fed.R.Evid. 706. Upon the parties' suggestion, and with their consent, the Court appointed expert has met and communicated with the Court and the parties to aid in resolving and better understanding the complex technology and related issues that arise in cases like this:

*v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). An issue of credibility is insufficient to preclude the granting of a motion for summary judgment. Neither side can rely on conclusory allegations; instead, the disputed issues of fact must be supported by evidence that would allow a "rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, factual disputes that are irrelevant to the disposition of the suit under governing law will not preclude entry of a summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

*Harbor Software I,* 887 F.Supp. at 89.

## II. Copyright Infringement

To establish a claim for copyright infringement, plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). The second element of this test requires plaintiff to show both that: " '(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.' " *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1002 (2d Cir.1995) (*quoting Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 122–23 (2d Cir.1994)). As discussed above, the Court previously determined which aspects of SCM were protectable. Defendant claims that plaintiff will be unable to show illicit copying and thus it is entitled to judgment as a matter of law.

### A. Extent of Protection

At the outset, the parties dispute the extent of protection to be accorded plaintiff's program. Defendant proposes that the bulk of the exhibits should be compared under the "trivial difference" standard articulated in *Kregos v. Associated Press,* 937 F.2d 700, 710 (2d Cir.1991). Plaintiff responds that the traditional "substantial similarity" test is appropriate. I agree with plaintiff as to all

exhibits except the screen displays and reports.

▆▆▆ The Second Circuit has seemingly established three levels of scrutiny for the substantial similarity requirement necessary to establish unlawful copying. In general, the test for substantial similarity is the "ordinary observer test." *Knitwaves,* 71 F.3d at 1002. This test asks "whether 'an average lay observer would [ ] recognize the alleged copy as having been appropriated from the copyrighted work.' " *Id.* (*quoting Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 766 (2d Cir.1991)) (alteration in original). In cases where the copyrighted work contains both protectable and unprotectable elements, however, courts apply a "more discerning" version of the "ordinary observer" test. Under this analysis the court "must attempt to extract the unprotectable elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar." *Id.* This is essentially the analysis required under *Altai*'s abstraction-filtration-comparison test. Finally, for some works in which the author contributed only a minimum of creativity, such as a fact-based compilation, a defendant need only demonstrate that his work "differs in more than a trivial degree" from plaintiff's to defeat an infringement claim. *Kregos v. Associated Press,* 937 F.2d at 710.

▆▆▆ Defendant's argument that the trivial difference standard should apply to all exhibits where the selection, arrangement and/or organization of the nonliteral elements was found protectable misconstrues the law. The terms selection, arrangement and organization are the stock language copyright law uses to refer to the creative contributions an author makes in the development of the protectable elements of a work that contains both protectable and unprotectable elements. For example, in *Knitwaves,* the Second Circuit found that Knitwaves' original contributions to the design of sweater patterns consisted of selecting the design elements, coordinating these elements with certain colors and patterns, and arranging all the design elements and colors into an original pattern. *See Knitwaves,* 71 F.3d at

1004. Even though the court looked to the Supreme Court's decision in *Feist* for guidance, as I did here, *see Harbor Software II,* 925 F.Supp. at 1047–48, the Second Circuit did not apply the *Kregos* trivial difference test. I conclude that the substantial similarity test applies to exhibits 4, 5, 6, 8, 9, 11, 12, 14, 28 and 38.

 The trivial difference test, however, will be applied to the screen displays and reports, exhibits 25 and 29–36. In the filtration process, defendant argued merely that these exhibits were not protectable as nonliteral elements of the code. I found, however, that they are protectable as compilations. As these exhibits are compilations of factual information, such as names, addresses, insurance industry codes, and insurance marketing statistics, they are analogous to the pitching forms at issue in *Kregos*. I find it appropriate to compare these SCM and TAM exhibits under the *Kregos* analysis and will grant defendant's motion as to these exhibits if they "differ[ ] in more than a trivial degree." *Kregos,* 937 F.2d at 710.

B. Application

1. Exhibits 4, 5, 6, 8, 9, 11, 12, 14, 28 and 38

 These exhibits were found to represent protectable nonliteral elements of SCM in *Harbor Software II*. The Court has considered the submissions of the parties and the arguments and demonstrations made at oral argument. I conclude that genuine issues of material fact exist as to whether the TAM exhibits are substantially similar to the SCM exhibits. Therefore summary judgment is denied as to these exhibits.

2. Exhibits 25, 29–36

In *Harbor Software II*, I found that the selection and arrangement of the data categories included in these exhibits was protectable. *Harbor Software II*, 925 F.Supp. at 1052. In its memorandum of law, defendant conducted a comparison of the selection and arrangement of the data in the PSCM and

PTAM exhibits. I have independently reviewed and compared the two sets of exhibits. With respect to all exhibits except 30 and 31, I find that the defendant has demonstrated not only that the PTAM exhibits differ by more than a trivial degree, but also that they are not substantially similar under the traditional "ordinary observer" test. Plaintiff has not responded with its own analysis that demonstrates the existence of a genuine issue of material fact. Accordingly, I find summary judgment is appropriate with respect to exhibits 25, 29, and 32–36.

a. Exhibits 25, 29, 30, 31

 These reports are tracking logs that measure various marketing statistics. The arrangement of the data is significantly different. The PSCM reports are organized by horizontal row according to date. In contrast, the PTAM reports are organized by horizontal row according to marketing event.

PSCM 25 and PTAM 25 also track different statistical information. Therefore the selection of data categories is different. PSCM 25 tracks an insurance agency's contacts with an insurance carrier; PTAM 25 tracks an insurance agency's contacts with its clients. Although plaintiff's expert stated that "PTAM calculates substantially similar statistics as PSCM 25," Affidavit of Jeffry M. Tollaksen on Summary Judgment Motion at ¶ 195, his explanation discusses only the methods by which the statistics are calculated in both programs, not the underlying facts that the statistics reflect. The choice of data categories is the protectable element, however, and plaintiff does not respond to defendant's argument that the choices made in TAM are different from the choices made in SCM. Therefore, plaintiff's affidavit fails to create a genuine issue as to a material fact.

Similarly, PSCM 29 and PTAM 29 track different information. Unlike exhibits 25, however, this is because PSCM 29 is a user defined tracking report. It will track whatever marketing statistics the user asks the computer to follow. In the absence of any user action, this report is essentially blank.[2] Therefore, the only similarities between

---

**2.** On this motion, defendant argues that PSCM 29 is not protectable because it is merely a blank-form template. However, defendant did not raise this argument during the filtration process. While this argument is compelling, I find that it has been waived.

PSCM 29 and PTAM 29 are those created by a user, not Applied Systems. Plaintiff responds that "PTAM 29 indicates that both programs perform user defined cyclic statistics." Tollaksen Aff. at ¶ 196. However, plaintiff does not explain how PTAM indicates this. Such conclusory statements are inadequate. More importantly, even if PTAM does perform user defined functions, that does not alter the fact that Applied Systems could not have copied Harbor Software's selection and arrangement of data categories where that selection and arrangement is dictated by the user, not Harbor Software.

Exhibits 30 and 31 differ in arrangement, as noted above. However, the record is not clear as to exactly what statistics the PTAM exhibits track. Defendant merely asserts that its reports measure different data. Such conclusory statements without further explanation are insufficient to support a motion for summary judgment. While summary judgment may well be proper with respect to these two exhibits, in the absence of the requisite record, I leave these issues for trial.

b. Exhibits 32, 33, 34, 35 and 36

■ Defendant's memorandum demonstrates that a significant percentage of the data categories included in plaintiff's exhibits are not included in defendant's. In *Kregos v. Associated Press*, 3 F.3d 656 (2d Cir.1993), the Second Circuit held that where the defendant's pitching form contained four out of ten statistics that were different from those contained in the plaintiff's form, the two forms were not substantially similar as a matter of law. Applied Systems points to the *Kregos* decision and notes that the percentage of different data categories is larger than 40% in each of these exhibits. In addition, the Court finds that the arrangement of these reports is different. Finally, plaintiff did not respond to defendant's arguments with respect to these exhibits. For all of these reasons, summary judgment is granted as to exhibits 32, 33, 34, 35 and 36.

### III. Trade Secret Misappropriation

■ In *Harbor Software II*, the Court held that plaintiff's exhibits 15, 16 and 16b were not protected by copyright because they represented "standard techniques found in every database program" and "are found in the public domain." *Harbor Software II*, 925 F.Supp. at 1051. In addition, the Court found that exhibits 18, 19, 21 and 24 were not protectable because the expression represented in the exhibits had merged with the process the exhibits described. *Id.*

Applied Systems now moves for summary judgment that these exhibits be dismissed from plaintiff's trade secret misappropriation cause of action. It argues that elements found in the public domain cannot be trade secrets because they are, by definition, not secret. Those exhibits which have merged with their underlying process are also outside trade secret law, defendant contends, because they are obvious to anyone who operates the program and they were published in plaintiff's training manual.

However, even if these exhibits were not independently protectable as trade secrets, about which I need not express any opinion now, they may constitute protectable trade secrets as part of the larger program. As I stated in *Harbor Software I*:

> [C]ase law supports the proposition that the overall *design* of a software program may be protectable as a trade secret, even if the individual *components* of that program are common knowledge in the programming industry. *Computer Care v. Service Sys. Enters.*, 982 F.2d 1063, 1074 (7th Cir.1992) (" 'A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process design and operation of which in unique combination affords a competitive advantage and is a protectable trade secret.' " (quoting *SmokEnders, Inc. v. Smoke No More, Inc.*, 184 U.S.P.Q. 309, 317 (BNA), Civ. No 73–1637, 1974 WL 20234 (S.D.Fla. Oct 21, 1974))).

*Harbor Software I*, 887 F.Supp. at 90–91. Therefore, defendant's motion is denied.

### IV. Evidentiary Issues

Harbor Software recently proposed several revisions to the PSCM exhibits that abstract-

ed its software. Many of these changes are minor word substitutions, and defendant has not objected to them. A number of these revisions are substantive, however, and Applied Systems has objected on the grounds that they will have to be reviewed for technical accuracy and completeness and insufficient time remains to perform this analysis prior to the commencement of trial on September 24, 1996. Applied Systems claims it will be prejudiced if it is forced to spend the remaining time prior to trial reviewing the revised PSCM exhibits, rather than preparing its defense. The scheduling orders in this case have been adjourned before to allow plaintiff to complete the abstraction process. The case is now ready for trial, and plaintiff's application for further substantive modifications is denied.

### Conclusion

As discussed above, plaintiff's Lanham Act cause of action is withdrawn. Defendant's motion for summary judgment with respect to copyright infringement is granted as to exhibits 25, 29 and 32–36. In all other respects, defendant's motion is denied. As noted above, trial will begin on Tuesday, September 24, 1996.

SO ORDERED.