**Mary A. KYLES, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

No. 02–3290.

United States Court of Appeals, Federal Circuit.

DECIDED: March 21, 2003.

Before MAYER, Chief Judge, LOURIE and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Mary Kyles appeals from the Merit Systems Protection Board's affirmance of the Office of Personnel Management's reconsideration decision that she was not eligible for a survivor annuity benefit under

the Civil Service Retirement System ("CSRS"). We *affirm.*

## BACKGROUND

Beulah "Bea" M. Wall was an Insurance Accounts Clerk until her retirement from the Department of Veterans Affairs in Philadelphia on June 1, 1999. At the time of her retirement, Ms. Wall elected to receive a reduced CSRS annuity with an insurable interest survivor annuity benefit for Ms. Kyles. *Kyles v. Office of Pers. Mgmt.*, No. PH–0831–02–0022–I–1, slip op. at 2 (MSPB Feb. 28, 2002).

Sometime thereafter, the Office of Personnel Management ("OPM") sent Wall two letters dated August 30, 1999. The first of those letters (referred to below as the "confirmation letter") explained that "the law requires that you confirm" the election of the insurable interest annuity. That letter set forth the monthly benefits that Wall would receive with a regular annuity, as well as the reduced benefit that she would receive if she confirmed her choice of the annuity with the insurable interest benefit for Kyles. The letter also stated, "If you decide to confirm your initial election of an insurable interest survivor annuity, ... you must submit to OPM, along with this confirmation letter, medical documents from a recent medical examination demonstrating that you are in good health."

The final page of the confirmation letter included two sections, respectively entitled "Annuity Election" and "Medical Evidence Demonstrating Good Health," and a signature line. The Annuity Election section included two check boxes, one next to the statement, "I elect a regular annuity *with-*

*out providing* an insurable interest survivor benefit to Mary A. Kyles," and the other one next to the statement, "I elect a regular annuity *providing* an insurable interest survivor benefit to Mary A. Kyles." The Medical Evidence section included three check boxes with which to indicate, with regard to the medical evidence required for election, whether it: "Will *not* be submitted, since I wish to void my election"; "Was submitted with my retirement application"; or "Is enclosed with this confirmation letter."

Wall completed the Annuity Election and Medical Evidence sections of the confirmation letter, checking the boxes corresponding to "I elect a regular annuity *without providing* an insurable interest survivor benefit" and "[medical evidence demonstrating good health i]s enclosed with this confirmation letter." She signed the letter, dated it August 20, 1999,[1] and returned it to the OPM along with a letter dated August 9, 1999, from her doctor stating that, although she had previously had some problems, her "overall health status at present time is stable."

The second August 30 letter included a copy of OPM Form 1538 (*i.e.,* "Statement Regarding Former Spouse"). According to that second letter, Wall had not completed the section of her retirement application that asked whether she had any former spouse to whom a court order had awarded a survivor annuity, and she was accordingly asked to complete and return the Form 1538 before her annuity could be finalized. Wall never returned the form, and the record reflects that the OPM later prepared a "Special Notice," stating: "Since you failed to respond to our request (letter dated 30 August 1999) to complete

---

1. It is unclear from the record whether Wall wrote the wrong date next to her signature or the OPM mistakenly dated its letter. Wall obviously could not have signed the letter ten days before OPM sent it to her. That the mistake was OPM's is suggested by the fact that the letter from Wall's doctor was also dated prior to OPM's letter. In any event, the mistake has no bearing on our decision.

and return form OPM 1538—Statement Regarding Former Spouses, we have completed your retirement case with a reduction in your gross annual annuity to provide a full survivor benefit."

Wall died intestate in June 2000. She had, however, named Kyles as beneficiary of her life insurance policy and savings bonds. *Kyles,* slip op. at 4. Kyles subsequently filed an application for the CSRS survivor annuity benefit. *Id.* at 2. Her application was denied by the OPM, citing Wall's failure to confirm her initial election of the survivor benefit. Kyles sought reconsideration, alleging that any reversal of Wall's decision to name her as beneficiary was the result of fraud or mistake. The OPM denied reconsideration. Kyles then appealed to the Merit Systems Protection Board. *Id.*

Following a telephonic hearing, the administrative judge ("AJ") issued an initial decision affirming the OPM's denial of benefits to Kyles. The AJ found that Wall had made an informed choice not to elect an insurable interest annuity, and that "a reasonable person would not have been confused or misled by OPM's letter and instructions," so "there is little likelihood that Ms. Wall would have been confused as to the selection that she made in the confirmation letter." *Id.* at 5. Kyles did not file a petition for review by the full Board, and the AJ's initial decision became the final decision of the Board under 5 C.F.R. § 1201.113.

Kyles now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). "Under the substantial evidence standard of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Jacobs v. Dep't of Justice,* 35 F.3d 1543, 1546 (Fed.Cir.1994) (quoting *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The burden of proof to demonstrate entitlement to retirement benefits rests on the petitioner. *Cheeseman v. Office of Pers. Mgmt.,* 791 F.2d 138, 140 (Fed.Cir.1986).

In support of her position that the Board erred in affirming the OPM's decision, Kyles argues that Wall's actions, including having undergone a medical evaluation at her own expense and forwarding the results to the OPM, were inconsistent with an intent to revoke the election of the survivor annuity and "should be considered sufficient to satisfy the election requirements" under the doctrine of substantial compliance. According to Kyles, Wall's checking the *"without providing"* box was simply an error, and "should not be allowed to trump all of the other actions taken to the contrary." Kyles also argues that there is no evidence that Wall had reason to or intended to revoke Kyles's survivor interest.

Kyles further argues that "[t]he circumstances surrounding Ms. Wall's election of an annuity interest in favor of her partner were confusing both subjectively and objectively." According to Kyles, "[c]onfusion is the only explanation for Ms. Wall providing the medical information necessary to support her election in favor of her partner while, at the same time, checking the box removing that annuity interest." Kyles also argues that the OPM's own staff was confused, referring to a hand-

written note in Wall's retirement records stating, "Mary Kyles should be the insurable interest / On the survivor annuity screen it shows Beulah Wall's name? *Something wrong?!*" Kyles also points to evidence that the OPM made reduced monthly payments to Wall for the remainder of her life, as if her election had been correctly made. Kyles asserts that a reasonable person would have been confused under those circumstances and that the Board's conclusions are therefore not supported by substantial evidence and must be overturned.

The government responds that the AJ's decision is supported by substantial evidence. Section 831.613(f) of Title 5 of the Code of Federal Regulations requires confirmation of the election of an insurable interest benefit; when asked to confirm her election, there is no dispute that Wall checked the box corresponding to "I elect a regular annuity *without providing* an insurable interest survivor benefit to Mary A. Kyles." Moreover, the government argues that Wall's submission of medical evidence does not prove that she "checked the wrong box," but merely suggests that she was confused as to when medical evidence was required. According to the government, Kyles has not demonstrated that, at the time Wall signed the confirmation letter, a reasonable person would have been confused by the OPM's letter and instructions. The government also explains that the fact that Wall received reduced annuity payments for the remainder of her life was not due to confusion among the OPM's staff, but was simply a result of Wall's failure to complete and return the "Statement Regarding Former Spouses."

We agree with the government's position and will therefore affirm the Board's decision. The Supreme Court has explained that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). This appears to be such a case, in which the balance of the evidence is near equipoise or perhaps might even be tilted slightly in favor of Kyles. The evidence of record indicates to us that Wall might have simply made a mistake and checked the wrong box, and that she might have intended to confirm her election of an insurable interest survivor annuity benefit for Kyles. Consequently, we might have decided this case in Kyles's favor if we were a court of first instance. However, the scope of our review of the Board's decision is limited to the determination whether substantial evidence supports the Board's conclusion, and we agree with the government that the Board's decision is, unfortunately for Kyles, supported by substantial evidence.

The "Annuity Election" confirmation letter completed by Wall had only two choices, with the difference between those choices (*i.e., "without providing"* vs. *"providing"*) emphasized with underlining. It is undisputed here that Wall checked the box next to the *"without providing"* statement in her confirmation letter. While it is asserted here that Wall may have been confused by those choices, we cannot say on this record that the form was objectively confusing. Wall's checkmark alone constitutes substantial evidence of her election justifying affirmance.

Wall's arguments do not overcome that substantial evidence. The fact that Wall provided some medical evidence along with the confirmation letter does not prove that she was confused with respect to which box to check (much less that she was objectively justified in being confused), but may simply reflect her subjective confusion as to whether it was necessary to send medical evidence. Moreover, the govern-

ment's explanation that it was as a result of Wall's failure to complete and return the "Statement Regarding former Spouses" that the OPM paid Wall a reduced annuity for the remainder of her life,[2] despite her having checked the *"without providing"* box, is supported by the OPM's Special Notice resulting from that failure. In addition, the OPM's continuing to send reduced payments after Wall returned the confirmation letter obviously occurred after Wall signed the letter. Therefore, those reduced payments could not have contributed to Wall's confusion *at the time* she signed the form. Thus, even if the sending of the reduced payments had been objectively confusing, the reduced payments were made after Wall's election period had expired. *Holder v. OPM,* 47 F.3d 412, 414–15 (Fed.Cir.1995). Finally, although Kyles advanced Wall's designation of Kyles as the beneficiary of her life insurance policy and savings bonds as evidence that Wall also intended that Kyles receive the survivor benefit annuity at issue here, it is nonetheless also plausible that Wall could have decided that Kyles would be well enough provided for by those other assets that it would not have been necessary to make an approximately ten percent reduction in her own benefits to further provide for Kyles. The record also indicates that Wall was more than five years younger than Kyles, and, if she were actually healthy enough to be entitled to elect the survivor benefit at the time of her retirement, she might have felt that it was not prudent for her to reduce her annuity by making that election.[3]

The cases cited by Kyles do not compel a different result. In *Frantz v. Office of Personnel Management,* 778 F.2d 783 (Fed.Cir.1985), for example, this court held that a Board decision denying a retiree's application to amend her survivor's annuity election was not supported by substantial evidence. There, "the overwhelming weight of the evidence support[ed the retiree's] position that a reasonable person would have remained confused over the effect of an election." *Id.* at 787. It was held in that case that, to overturn the Board's decision, it was necessary not only to prove that the retiree was confused at the time of her election of the particular retirement benefit, but also to prove that a reasonable person would have been confused under the same circumstances. *Id.* at 786. Kyles has not met that threshold standard in this case. The Board concluded that "a reasonable person would not have been confused or misled by OPM's letter and instructions" and that "there is little likelihood that Ms. Wall would have been confused as to the selection that she made in the confirmation letter." As we explained above, that conclusion is supported by substantial evidence.

Moreover, this case does not present the plainly absurd result that followed from the retiree's mistaken election in *Lubag v. Office of Personnel Management,* 88 M.S.P.R. 484 (M.S.P.B.2001). In that case, the retiree's survivor would have had to have lived to be 124 years old to collect in monthly payments what the retiree

---

**2.** Whether or not some relevant party is entitled to make a claim for the difference between the full annuity and the reduced annuity in light of the fact that the reduction has now been held to have had no chance of benefiting any survivor, we are not in a position to say.

**3.** The government also argued that the medical evidence that Wall supplied with her signed confirmation letter was inadequate to demonstrate sufficiently good health to qualify for election of a survivor interest for Kyles. Although we agree that the August 9 letter from Wall's doctor is rather sparse, the OPM did not deny Kyles benefits on that basis. The sufficiency of that evidence is a factual question that neither the OPM nor the Board considered.

could have elected to take in a single lump sum, even disregarding any compounded interest. *Id.* at 488–89. Here, in contrast, it would not have been irrational for Wall to elect a larger monthly CSRS annuity payment in the present rather than to speculate that Kyles, who was more than five years her senior, would outlive her. The fact that we now know, in hindsight, that Kyles did outlive Wall is not a relevant consideration.

We have considered Kyles's other arguments, and find them unpersuasive.

## CONCLUSION

Substantial evidence supports the Board's decision to affirm the OPM's denial of benefits to Kyles. The Board's decision is therefore affirmed.